### EMPLOYERS CASUALTY CO. v. GIVENS et ux.

No. 13637.

Court of Civil Appeals of Texas. Dallas.

Oct. 5, 1945.

Robertson, Leachman, Payne, Gardere & Lancaster and W. Orrin Miller, all of Dallas, for appellant.

White & Yarborough and T. H. Howard, all of Dallas, for appellees.

YOUNG, Justice.

Suit originated in justice court, upon a hospitalization policy issued by appellant. In County Court at Law, Mrs. Givens alleged that she had been confined in a Los

Angeles hospital for fourteen days and was entitled to recover $5 per day under the policy; praying in addition for $35 attorney's fees and 12% penalty. Final judgment was for $70, plus $35 attorney's fees, $8.40 penalty—a total of $113.40.

There is no particular conflict in the testimony, insurer contending that the place where plaintiff had been confined was not a hospital, within meaning of the contract, precluding a recovery; the jury answering "Yes" to Issue 1, reading: "Do you find from a preponderance of the evidence that the home of Mrs. Daisy Wharton was a hospital, as that term has been defined herein?" The definition referred to, simply adopted the following printed language of the policy: "By 'hospital' as used herein, is meant: An institution conducted for the regular reception and treatment of the sick, rendering services and facilities commonly and generally recognized and accepted as hospital services and facilities."

During the policy year (April 1943), Mrs. Givens, in Los Angeles, was admitted through request of a Dr. Wilson to the nursing home of Mrs. Daisy Wharton, 427 S. Ardmore Avenue, suffering from an arthritic condition. While there she was regularly visited and treated by her physician; the nursing care including private room, bedside attention, special diet, and meals. Appellee remained at Mrs. Wharton's for fourteen days, paying $5 per day, the expense being a predicate for her claim of hospitalization benefit, under section 8, page 2, of the policy. Testifying, Mrs. Givens said that prior to April 1943, she had been a patient at Baylor Hospital, Dallas, and afterwards at St. Paul's Sanitarium, with same ailment, and was rendered the same service as was afforded at Mrs. Wharton's institution; the following question and answer being stated on cross-examination:

"Q. Can you name any facilities or services which Mrs. Wharton had in her home which you would not have had in your home in Los Angeles, if you had owned or rented one there, had you hired a private nurse to come to your own home and take care of you? A. I cannot think of a thing."

She had previously sought admission to a regular hospital in Los Angeles, but without avail. The home of Mrs. Wharton, a graduate nurse, is located in the residential section, using four rooms for nursing service. Mrs. Wharton testified (and other record evidence discloses) that hospitals were not permitted in the residential section of Los Angeles; other excerpts from her written deposition being:

"Q. (8) Please state whether or not you have ever operated a hospital in the City of Los Angeles, California? If so, when and where? A. I have never operated a hospital, at any time or place.

"Q. (9) Please state whether or not your nursing home is provided with operating rooms and operating facilities? A. Of course my rest home is not provided with operating rooms or operating facilities. I consider that a silly question, as I do not conduct a hospital, I simply conduct a nursing home. * * *

"Q. (13) Please state whether or not your establishment is in any sense a hospital, sanitarium or sanatorium? A. No. my establishment is not in any sense a hospital, sanitarium or sanatorium. This is my private home, this is a nurses' private home.

"Q. (14) Does the telephone directory for the City of Los Angeles have a section where the hospitals are listed? A. Yes, it does.

"Q. (15) Please state whether or not your establishment is listed in the telephone directory along with the other hospitals, if you have so stated in the preceding question that the other hospitals are listed? A. No, it is not listed in any directory as a hospital, how could it be, when it is not a hospital. * * *

"Q. (25) If you have stated in answer to the preceding question that you are familiar with the facilities that hospitals generally have, please list some of the facilities and accommodations that hospitals do have. A. Hospitals are provided with X-Ray equipment, laboratory equipment, sterilization rooms, operating rooms, and drug and chemical laboratories and dispensaries.

"Q. (26) Please state whether or not your nursing home would qualify as a hospital as to having the facilities that you have mentioned in your preceding answer. A. No, my nurses' home would not qualify as a hospital, as to having any of the facilities that I have mentioned in my answer to the preceding question. I do not have any of those facilities."

As to provisions of the policy, it is expressly stipulated that the word "hospital" shall mean: "An institution conducted for

the regular reception and treatment of the sick, rendering services and facilities commonly and generally recognized and accepted as hospital services and facilities, but shall not include facilities provided in a doctor's office or clinic used merely in the routine treatment of patients and not generally recognized as hospital facilities." And, under paragraph styled "Hospital and Ambulance Service," is provided: "While this certificate is in force, issued to the named Insured, the Company shall pay for Hospital Services actually *furnished by any hospital* to the Insured for any period not to exceed thirty (30) days as the result of any one injury or illness. * * *." (Italics ours.) In same connection, the printed schedule of benefits, additional to private room space, includes operating room, anesthesia, laboratory fee, medical or surgical dressings, X-Ray examination, and ambulance service.

By their contract the parties have agreed that the claimed benefits shall be furnished *by a hospital;* and that the nursing home of Mrs. Wharton was not such, is clear from both policy and undisputed facts. In support of the judgment rendered, the leading case of Southern Surety Co. v. Beaird, Tex.Civ.App., 235 S.W. 240, is not considered in point. There the "hospital services" mentioned in Texas Workmen's Compensation Act, Vernon's Ann.Civ.St. Art. 8306 et seq., were not required to be furnished by a hospital; the nursing care, meals, and other necessities supplied claimant Beaird in his father's home being held comparable to similar services rendered by hospitals. More analogous in fact and principle is Hesse v. United States Fidelity & Guaranty Co., 143 Or. 700, 21 P.2d 1090, 1091, where suit involved an accident policy, specifically providing that insurer would only be liable for hospital expenses during period insured was necessarily confined to a hospital. After one day in the hospital, insured was taken home by ambulance and special help was hired to care for him while bedridden; which item of expense was included in the claim. The Insurance Company refused to pay the extra hospital charge and, in upholding insurer's position, the court said: "We cannot make a new contract for the parties. The insurer is entitled to the full benefits of its contract. Giving to the terms of the contract their ordinary meaning and acceptance, it cannot reasonably be contended that expenses while not confined in a hospital were within the contemplation of the parties. *A private dwelling is not a hospital.* When plaintiff left the hospital, he could no longer recover 'hospital expenses.' While there is considerable equity in the claim of plaintiff, the insurer has without doubt the right to insist on the terms of the 'bond'." (Italics ours.)

So here, appellees' claim has undoubted merit in a proper case. The policy, however, is not ambiguous, and any construction imposing liability under the instant facts would involve a clear distortion of policy terms. Judgment is accordingly reversed and rendered in favor of appellant, Employers Casualty Company.

LOONEY, J., dissents.