Samuel A. Spiegel, J.
Plaintiff sues to recover from defendant insurance carrier the sum of $8,515.82 as indemnification for hospital expenses pursuant to a group accident and health policy. Plaintiff advanced the sum of $9,144.78 in connection with institutional care provided at Ferncliff Manor for his *185 mentally defective son. Pursuant to the terms of the policy, defendant agreed to reimburse its assured for 80% of hospital expenses incurred (less $50 deductible) by plaintiff or members of his family.
Defendant resists payment on the ground that the institution whereat plaintiff’s son is and continues to be confined is, according to the terms of the policy, not truly a hospital, while plaintiff urges that “ Ferncliff ” is, in actual fact, a hospital.
Plaintiff’s contention is predicated on the fact that “Fern-cliff ” is a hospital by virtue of a general dictionary definition, and the further fact that it is licensed by the New York State Department of Mental Hygiene. Plaintiff also contends that mental institutions are not classified among the institutions specifically and expressly excluded by the policy and that “ Ferncliff” substantially complies with the policy’s definition of a hospital.
The institution contains 96 beds, has 3 registered nurses, 6 practical nurses and 14 attendants in continual attendance. Although the institution has no resident physician, an “ off-premises ’ ’ doctor is available upon a few moment’s notice. The institution lacks an operating room, X-ray room and pharmaceutical facilities.
In connection with an article 78 (Civ. Prac. Act) proceeding involving the issuance of a building permit to “ Ferncliff,” the court, upon the occasion of such proceeding, held that for the purposes of qualifying for the permit in question Ferncliff Manor was “a hospital or sanitarium” (Matter of Saich v. Balint:, 9 Misc 2d 11). Plaintiff urges that the finding of the court in the afore-mentioned article 78 proceeding be adopted by this court.
The group policy sets forth three requirements for a “hospital” which must be fully satisfied. They are: (a) the institution be “ primarily engaged in providing — for compensation from its patients and on an in-patient basis — diagnostic and therapeutic facilities for the surgical and medical diagnosis, treatment, and care of injured and sick persons by or under the supervision of a staff of physicians”; (b) “It continuously provides twenty-four hour a day nursing service by registered graduate nurses”; (c) “It is not, other than incidentally, a place for rest, a place for the aged, a place for drug addicts, a place for alcoholics, or a nursing home.”
In the case of Shneiderman v. Metropolitan Cas. Co. (14 A D 2d 284) the court held that the rule which dictates construction of any ambiguity against the insurer has particular application where exclusions are involved.
*186 Any doubt in the construction to be adopted must be resolved against the insurer (Sperling v. Great Amer. Ind. Co., 7 N Y 2d 442; Taylor v. United States Cas Co., 269 N. Y. 360; Ætna Cas. & Sur. Co. v. General Cas. Co., 285 App. Div. 767; Janneck v. Metropolitan Life Ins. Co., 162 N. Y. 574; Birnbaum v. Jamestown Mut. Ins. Co., 298 N. Y. 305).
A court will construe the insurance contract strictly against the insurer and most favorably to the insured only when there is an unexplained ambiguity in the language of the policy (Handley v. Oakley, 10 Wn. [2d] 396; Employers Cas. Co. v. Givens, 190 S. W. 2d 155 [Texas]; Griffey v. New York Cent. Ins. Co., 100 N. Y. 417; Darrow v. Family Fund Soc., 116 N. Y. 537; Matthews v. American Cent. Ins. Co., 154 N. Y. 449; Janneck v. Metropolitan Life Ins. Co., 162 N. Y. 574).
However, in the absence of evidence to the contrary, parties to a contract of insurance will be presumed to have intended the terms of the contract as they are ordinarily understood by the average man (Lewis v. Ocean Acc. & Guar. Corp., 224 N. Y. 18; Silverstein v. Metropolitan Life Ins. Co., 254 N. Y. 81). A policy of insurance is a contract, and its language, like that of any other contract, must be given its usual and ordinary meaning (Richards v. Metropolitan Life Ins. Co., 184 Wash. 595; Drilling v. New York Life Ins. Co., 234 N. Y. 234, 241).
In the case of McGrail v. Equitable Life Assur. Soc. (292 N. Y. 419, 424) the Court of Appeals said that such “ meaning must be given to the teums used as would be ascribed to them by the average man in applying for insurance and reading the language of the policy at the time it was written ”.
Further, on pages 424 — 425, the court continued, “ Rules for the construction of contracts of insurance do not differ from those to be applied to the construction of other contracts. When terms used are clear and unambiguous, they are generally to be taken and understood in their plain, ordinary and proper sense (Johnson v. Travelers Insurance Co., 269 N. Y. 401, 408). But resort to a literal construction may not be had where the result would be to thwart the obvious and clearly expressed purpose which the parties intended to accomplish or where such a construction would lead to an obvious absurdity (Silverstein v. Metropolitan Life Ins. Co., 254 N. Y. 81) or place one party at the mercy of the other (Russell et al. v. Allerton, 108 N. Y. 288, 292). Such meaning must be given to the terms used as would be ascribed to them by the average man in applying for insurance and reading the language of the policy at the time it was written (Lewis v. Ocean Acc. & G. Corp., 224 N. Y. 18, 21; Silverstein v. Metropolitan Life Ins. Go., supra). Consistently followed in this State has been the rule that the policy must be construed *187 reasonably and that it be given a practical construction, not thereby with the result that there is a revision of the policy or an increase of the risk and thus an extension of the resulting liability, but for the purpose of determining what the parties most reasonably have intended by its terms when the policy was written by defendant and accepted by the plaintiff (Garms v. Travelers Insurance Co., 242 App. Div. 230; Williams v. John Hancock Mut. Life Ins. Co., 245 App. Div. 585; Goldstein v. Connecticut General Life Ins. Co., 273 N. Y. 578; Mintz v. Equitable Life Assurance Society, 276 N. Y. 546; Hartol Products Corp. v. Prudential Insurance Co., 290 N. Y. 44).”
In the case at bar the language is simple, clear and certain. There is no ambiguity either in the language or the intent of the policy and thus the terms are to be taken and understood in their plain, ordinary and proper sense (Johnson v. Travelers Ins. Co., 269 N. Y. 401).
The case of McKinney v. American Security Life Ins. Co. (76 So. 2d 630), cited by plaintiff does not apply to the case at bar. The court on page 633 said: ‘ ‘ An insurance policy is a contract to which rules for construction of written instruments apply. In resolving the meaning of a policy effect must be given to every part of the insurance policy if possible, and while all ambiguities in the policy must be construed in the insured’s favor and against the insurer, the policy, from terms of which the parties’ intent is evident, must be given a reasonable interpretation consonant with its apparent object and the parties’ plain intent. Quinones v. Life & Casualty Insurance Company of Tennessee, 1945, 209 La. 76, 24 So. 2d 270; * * * Stanley v. Cryer Drilling Company, 1948, 213 La. 980, 36 So. 2d 9; Oil Well Supply Company v. New York Life Insurance Company, 1949, 214 La. 772, 38 So. 2d 777; Moll v. Mutual Health Benefit ■& Accident Ass ’n, 1953, 223 La. 511, 66 So. 2d 320. The intention of the parties is of paramount importance and must be determined in accordance with plain, ordinary and popular sense of the language used in the agreement and by giving consideration on a practical, reasonable and fair basis to the instrument in its entirety. Beard v. Peoples Industrial Life Insurance Company of Louisiana, La. App. 1941, 5 So. 2d 340. Provisions in a life, health and accident policy should be given a liberal interpretation to the end that equity be done and the underlying beneficent purposes of the contract not be rendered nugatory. Manhein v. New York Life Insurance Company, La. App. 1941, 5 So. 2d 918.”
On page 634 the court continued: ‘1 Manifestly, the McDonald Clinic meets the requirement of supervision by a licensed Doctor of Medicine. It has an operating room where major surgical *188 operations may be performed * * * According to undisputed evidence the1 institution is a recognized hospital and more than twenty health and accident insurance companies have accepted claims for confinement at the Clinic without question.”
In the case at bar, there was no supervision by a licensed doctor of medicine; no proof that Ferncliff Manor was a recognized hospital; nor that any health and accident insurance companies had accepted any claim for hospitalization indemnity for confinement therein.
In the case of National Bankers’ Life Ins. Co. v. Hornbeak (266 S. W. 2d 228 [Texas]) the insurer failed to define “ hospital ” or “ any recognized hospital” in its policy and, consequently, is distinguishable from the case at bar.
In Dixon v. Pacific Mut. Life Ins. Co. (268 F. 2d 812, 816) the jury was to pass on the question of construction of the terms of the policy. In the charge, the court said ‘ ‘ that they were not to revise the policy or increase defendant’s risk ”.
In Goldbard v. Empire State Mut. Ins. Co. (156 N. Y. S. 2d 324) the court said that the policy must be construed against insurer if it is ambiguous.
In Sincoff v. Liberty Mut. Fire Ins. Co. (11 N Y 2d 386) the court held that the term 11 vermin ’ ’ in the exclusion clause did not include “ carpet beetles ” and would not have been so defined by the average man. Thus, it did not come within the intent of that clause.
In Matter of Saich v. Balint (9 Misc 2d 11, 13) (Ferncliff Manor), cited by plaintiff, the court said “premises may not only be used as a tuberculosis hospital for the treatment of contagious diseases but also for a 1 hospital or sanitarium — mental patients ’ ”. The question principally before that court was whether the premises must be used under the zoning law only for a tuberculosis hospital or could be used for the treatment of contagious diseases. The court determined that Ferncliff Manor was within the zoning law as a “ hospital or sanitarium.” It certainly did not decide that Ferncliff Manor was a hospital within the definition of the policy herein.
In Daly’s Astoria Sanatorium v. Blair (161 Misc. 716),' on pages 718 and 719 the court said: “ Although a hospital has been said to practice medicine through the agency of physicians and surgeons (People v. Woodbury Dermatological Institute, 192 N. Y. 454; Messer Co. v. Rothstein, 129 App. Div. 215; Matter of Stern v. Flynn, 154 Misc. 609), a comprehensive survey of the relationship existing between hospital, physician and patient compels me to adopt the view that a hospital, rather than practicing medicine per se, is a place where medicine is practiced *189 by physicians. * * * The cases, therefore, relegate a hospital to the role of a specialized hotel where the sick or infirm in body or mind may be treated by physicians In the case of Employers Cas. Co. v. Givens (190 S. W. 2d 155, 156-157, supra) the court said: “As to provisions of the policy, it is expressly stipulated that the word ‘ hospital ’, shall mean: ‘ An institution conducted for the regular reception and treatment of the sick, rendering services and facilities commonly and generally recognized and accepted as hospital services and facilities. * * * By their contract the parties have agreed that the claimed benefits shall be furnished by a hospital; and that the nursing home of Mrs. Wharton was not such, is clear from both policy and undisputed facts. * * * So here, appellees’ claim has undoubted merit in a proper ease. The policy, however, is not ambiguous, and any construction imposing liability under the instant facts would involve a clear distortion of policy terms. Judgment is accordingly reversed and rendered in favor of appellant, Employers Casualty Company.”
In the case of Rew v. Beneficial Standard Life Ins. Co. (41 Wn. [2d] 577) plaintiff, under a hospital policy, sought to recover indemnity for expenses at a convalescent home. The insurer failed to define the term “ hospital ” in its policy, as distinguished from the case at bar. The court said (pp. 581-583) it had laid down and followed the rule that: “‘A policy of insurance is a contract, and its language like that of any other contract, must be given its usual and ordinary meaning, unless it is apparent from a reading of the whole instrument that a different or special meaning was intended, or is necessary in order to avoid an absurd or unreasonable result.’ Richards v. Metropolitan Life Ins. Co., 184 Wash. 595, 55 P. (2d) 1067. [2] In the absence of evidence to the contrary, the parties to a contract of insurance will be presumed to have intended the words and terms of the contract as they are ordinarily understood by the average man. Kane v. Order of United Commercial Travelers of America, 3 Wn. (2d) 355, 100 P. (2d) 1036. * * * [4] The rule that contracts of insurance will be construed in favor of the insured and most strongly against the insurer should not be permitted to have the effect of making a plain agreement ambiguous and then construing it in favor of the insured. Hamilton Trucking Service v. Automobile Ins. Co. of Hartford, Connecticut, 39 Wn. (2d) 688, 237 P. (2d) 781. The trial court, therefore, erred in concluding that the Valley View Convalescent Home was a hospital within the policy coverage.”
In Reserve Life Ins. Co. v. Marr (254 F. 2d 289, 291) the policy called for indemnity if confinement was in a hospital. *190 The insured was confined 14 months to the Jane O’Brien Hospital in Spokane, Wash. It had been licensed as a nursing home, and several years before trial was licensed as a “psychiatric hospital. ’ ’ The court on page 291 said: “ It is apparent that the portion ofj the definition here relevant is ambiguously stated, so that the1 supervision phrase can be read to modify either the ‘ facilities ’ themselves or the ‘ patients ’ using such facilities. If read the latter way, there was admittedly sufficient compliance, for each patient was under the care of his own physician. It may well be that higher standards of operation of a hospital could be insured if the hospital is administered by a licensed doctor. The policies in question do not unequivocally contain such a requirement, and the ambiguity was properly construed by the trial court in favor of the policy holder. McCarty v. King County Medical Service Corp., 1946, 26 Wash. 2d 660, 175 P. 2d 653; Dorsey v. Strand, 1944, 21 Wash. 2d 217, 222, 150 P. 2d 702,, 705; Doke v. United Pacific Ins. Co., 1942, 15 Wash. 2d 536, 131 P. 2d 436, 135 P. 2d 71.” (In the case at bar, there was no ambiguity in the policy.) “ The trial court found that the facilities furnished substantially complied with the terms of the policy. A policy will be liberally construed in favor of the object to be accomplished and conditions and provisions therein will be strictly construed against the insurer. Jack v. Standard Marine Ins. Co., 1949, 33 Wash. 2d 265, 205 P. 2d 351, 8 A. L. B. 2d 1426. Undoubtedly the object to be accomplished by the insertion in the policy of a statement of the facilities to be available was to meet the standard of a hospital which the company determined would guarantee to the policy holders a high standard of care when hospitalized. This was undoubtedly on the theory that the better the care the sooner the patient would be released and thereby minimize the expense to the company. If such be the object to be accomplished, what difference would it make to a recovery whether the named facilities were under one management so long as the care was expertly provided and readily at hand1? In so deciding we are not disregarding plain and explicit language, but are holding that a liberal construction of the language of the policies supports the finding of the trial court that the facilities furnished by the hospital in which the insured was confined were in substantial compliance with the definition of a ‘ hospital ’ contained in the policy.” However, the facts and the terms of the policy are different from the case at bar. “ Substantial compliance ” was resorted to only because of an ambiguity in the policy in that case.
*191 In Ross v. First Amer. Ins. Co. (125 Neb. 329, 344) the policy limited indemnity to confinement in an incorporated hospital. “ The hospital to which plaintiff was removed and received treatment was a small, unincorporated hospital. It is contended that plaintiff was not entitled to recovery benefits for treatment in such a hospital. The probable purpose of the provision limiting such benefits to treatment in an incorporated hospital is that generally such a hospital would be of a more permanent character, have better facilities for treatment, and thus shorten the period of disability than one not incorporated. The provision was a reasonable one. The recovery for hospital benefits being limited to treatment received in a certain class of hospitals, there can be no recovery for treatment in any other class.”
In Kronstat v. Associated Hosp. Serv. (191 Misc. 619) plaintiff was not a registered bed patient of a hospital as required for indemnity by the terms of the policy.
In Blair v. Automobile Owners Safety Ins. Co. (178 Kan. 615), the plaintiff was to receive indemnity if he were confined to a hospital due to injuries sustained in an accident. The policy, however, excluded “ government hospital * * * for the care and treatment of the mentally diseased.” On pages 616-617, the court said: “ The sole question presented in this case is whether the State Sanatorium for Tuberculosis comes within the term ( government hospital ’ as that term is used in the exclusionary clause contained in the policy. A policy of insurance is a written contract. Its terms are to be given a reasonable construction and, in doing so, the entire contract should be considered together and effect given to every part. (Sheets v. Life Insurance Co., 116 Kan. 356, 225 Pac. 929.) The rule is well established in this State that if the terms of a policy of insurance are ambiguous or obscure or susceptible of more than one construction, the construction most favorable to the insured must prevail, and as the insurer prepares its own contracts it is its duty to make the meaning clear, and if it fails to do so, the insurer and not the insured must suffer. Courts should not be astute to evade the meaning of the words manifestly intended by the party, but where an insurance contract is unambiguous it must be enforced according to its terms. The language in an insurance policy is like any other contract and must be construed in such manner as to give effect to the intentions of the parties. The test to be applied in construing the terms of the policy is not what the insurer intended its words to mean, but what a reasonable person in the position of the *192 insured would have understood them to mean. Where a contract is not ambiguous, the court may not make another contract for the parties, but its function is to enforce the contract as made. These rules of law were thoroughly discussed, analyzed and applied in Braly v. Commercial Casualty Ins. Co., 170 Kan. 531, 227 P. 2d 571; Knouse v. Equitable Life Ins. Co., 163 Kan. 213, 181 P. 2d 310, and cases cited therein.”
Kaplan v. New York Life Ins. Co. (19 Misc 2d 987), cited by the plaintiff, concerns itself principally with the definition of nurses by the Education Law.
The undisputed testimony at the trial discloses .that there are no resident physician, no operating room, no X-ray room and no pharmaceutical facilities at Ferncliff Manor. The failure to pass any one of the essential tests required by the policy defeats classification as a hospital. The first and major requirement in the policy which Ferncliff Manor fails to meet is that the institution be ‘ ‘ permanently engaged in providing — for compensation from its patients and on an in-patient basis — diagnostic • and therapeutic facilities for the surgical and medical diagnosis, treatment and care of injured and sick persons by or under the supervision of a staff of physicians.” By no stretch of the imagination can it be said that Ferncliff Manor fulfills the policy mandate of “ supervision by or under a staff of physicians,” or to provide ‘ ‘ diagnostic and therapeutic facilities for the surgical and medical diagnosis ”. The policy specifically says: 11 The term ‘ hospital ’ means only an institution which meets fully every one of the following tests ”. The lack of the foregoing facilities and services does not constitute compliance with the policy. The availability in a few minutes of an outside doctor not on the staff for examinations or for emergency treatment does not satisfy the requirements of the insurance contract. Further, “ substantial compliance ” cannot be considered by the court. It is only applied where there is an ambiguity or obscurity in a policy, as was indicated in the eases (supra). It cannot be used to change the mandate of a policy which is clear and definite, as in the case at bar. Actual compliance with the contract of insurance and nothing less is required herein.
The final argument urged by plaintiff which must be considered is whether there should have been a specific exclusion of a mental institution under subdivision “ c.” Said subdivision ‘ ‘ c ” refers to specific exclusions such as places for rest, aged, alcoholics, narcotics, etc. As the court interprets this policy, it is obvious that neither mental cases nor mental institutions were excluded from coverage under subdivision “ c.” Apparently, it was intended by the policy to pay benefits for mental *193 cases if confined in a “ hospital ” as defined in the policy. In the instant case, the plaintiff would have been eligible for indemnity payments if Ferncliff Manor actually complied with the definition of a hospital. On the other hand, the exclusions contained in subdivision “ c ” were specific exclusions from coverage even if confinement were in a “ hospital” as defined in the policy. The exclusions in subdivision “ c ” inured to the plaintiff’s benefit because of the intent and language which apparently did not prohibit indemnity for mentally retarded cases, as so often appears in other policies of insurance. Plaintiff would have prevailed in this case because of coverage of mental cases had the patient been confined to a hospital which met the prerequisites of the policy. The definition of a hospital was clearly described and could be understood by the average person.
To hold otherwise in this case would mean that the court unjustifiably and without legal sanction is broadening the terms of the contract of insurance and adding an additional risk never intended nor contemplated. The court can neither rewrite nor interpret this policy since no ambiguity, uncertainty nor obscurity exists.
My compassion for the family cannot override my obligation to rule that under the law Ferncliff Manor is not a “ hospital.”
The court is fully sympathetic with the plaintiff’s plight. The condition of his son presents a most pathetic picture of a child utterly helpless with a prognosis that is completely hopeless. While unable to prevent the unfortunate result to the plaintiff encountered herein, the court cannot render itself completely oblivious to the sad situation which prevails in our community with respect to the facilities available for the care and assistance of the mentally retarded. In the entire City of New York, according to a communication to the court from the Department of Mental Hygiene, there are available only 6,284 beds for the mentally retarded in public institutions, of which 4,488 are for those between the ages of 5 and 24. The entire State-wide total for public institutions is 24,416 beds of which 12,340 are available for the afore-mentioned youthful age group. Private institutions in New York City provide only 15 beds and in the entire State these private facilities provide only 1,145 beds. Further, devoted parents may be drained penniless just paying the charges for the custody for life of a hopeless case in an institution. It becomes readily apparent that New York State with its population of approximately 18,000,000 people has made woefully inadequate provisions for the mentally retarded. This presents a sad, pitiful situation which should commend itself *194 to the attention of all public-spirited citizens and it is the court’s sincere hope that in the not too distant future a lethargic public, sufficiently aroused, will yet remedy the sad plight of our more unfortunate brethren.
Defendant’s motion to dismiss plaintiff’s complaint after trial is granted.