SYLVIA SCHECHTER et al., Plaintiffs, *v.* ASSOCIATED HOSPITAL SERVICE OF NEW YORK, Defendant.

District Court of Nassau County, Second District, September 26, 1966.

*Rothernberg & Beck* for plaintiffs. *Breed, Abbott & Morgan* for defendant.

BERNARD TOMSON, J. Plaintiffs have brought suit against Associated Hospital Service of New York to recover the sum of $300, claiming that A.H.S. was obligated under their family group policy to pay for charges rendered by Doctors Hospital, Freeport, New York, for a stay of the plaintiff Sylvia Schechter.

The policy provides coverage (Art. II, § A) for 14 items under the heading " Hospital Service." Items 11 to 14 read as follows:

" 11. Basal metabolic examination.

" 12. Use of cardiographic equipment.

" 13. Laboratory examinations.

" 14. X-ray examinations, but not including X-ray therapy."

The defendant insurance company has resisted the claim and seeks to avoid payment under the policy by reason of an exclusion under article V of the policy which provides as follows:

" Article V — Exclusions

" 4. For a hospital stay or that period of a hospital stay which is primarily for diagnostic X-ray or laboratory examinations or other diagnostic studies or physiotherapy or rehabilitation or any combination thereof, or during which the services rendered to the Subscriber are primarily physiotherapy, rehabilitation services or diagnostic studies or any combination thereof."

It was incumbent upon the plaintiffs to establish that Mrs. Schechter's stay at the hospital was within the coverage provided by the policy, was not a stay which was '' primarily '' for diagnostic X-ray or laboratory examinations or other diagnostic studies, and not a stay during which the service rendered to her were '' primarily '' diagnostic studies, the exclusions found in article V of the policy.

Critical to the interpretation of article V is the definition of the word '' primarily.'' '' Primarily '' is described in 72 C. J. S. 500 as follows: '' The adverb ' primarily ' has shades of meaning similar to those of the adjective ' primary.' It is defined as meaning in the first or most important place; originally; in the first intention; basically or in such manner as to be of first importance or of principal concern; in the primary or first instance; at first; in the first place; chiefly; principally. When the word ' primarily ' is applied to a single activity, it always means the first, or chief, or principal activity. Other accepted or common meanings of ' primarily ' are essentially or fundamentally.''

See, also, *Municipal Bond Corp.* v. *Commissioner of Internal Revenue* (341 F. 2d 683, 688) where it is stated: '' The word ' primarily ' is unambiguous and has a well-recognized and understood meaning. It has been construed in various types of cases of federal and state courts as meaning ' of first importance or principally ' '' (citing authorities).

If the word '' primarily '' is considered as meaning '' of first importance '', the purpose of article V is clear. Since diagnostic studies on an ambulatory basis are not covered by the policy, the exclusion clause is intended to avoid payment for a hospital stay used as a device for payment for diagnostic studies which should have been performed without hospitalization. The clause is not intended to exclude payment for diagnostic studies made during the course of legitimate hospitalization.

Upon the whole case, in order to recover, the plaintiffs are bound to prove that their loss is covered by the policy and not excluded by excepted coverage. (*Whitlatch* v. *Fidelity & Cas. Co.*, 149 N. Y. 45; *Sagorsky* v. *Malyon*, 4 A D 2d 1016; *Mount Sinai Hosp.* v. *Zorek*, 50 Misc 2d 1037.) The rule as stated has been applied in cases dealing with the same policy where the same exclusionary clauses have been asserted by the insurer. (*Society of N. Y. Hosp.* v. *Burstein*, 22 A D 2d 768; *Long Is. Coll. Hosp.* v. *Hertz*, 10 A D 2d 649. See, also, *Tasman* v. *Associated Hosp. Serv. of N. Y.*, 19 Misc 2d 809; *Links* v. *Metropolitan Cas. Ins. Co.*, 9 Misc 2d 570.) The fact that the insurer may choose to urge an exclusion under the contract as an affirmative defense, when the same issue is raised by denial, does not relieve

the policyholder from his burden of proving that his loss does not fall within the excluded coverage. (*Klar* v. *Associated Hosp. Serv. of N. Y.*, 24 Misc 2d 559.)

During the trial, Dr. David Ruskin, Mrs. Schechter's physician, an associate professor of medicine at Downstate Medical Center, an attending physician at Meadowbrook Hospital and a Fellow of the American College of Physicians, testified that he had examined Mrs. Schechter on January 26, 1966 and at the time Mrs. Schechter had complained of pains in her stomach, chest and left foot. She also complained of nausea. The doctor further testified that he came to no definite diagnosis as to the causes of her complaints. He further testified that she had been suffering from diabetes for several years prior to that date. A few days later Mrs. Schechter complained that her symptoms persisted after which Dr. Ruskin arranged for her admission to Doctors Hospital. Dr. Ruskin also testified that in January, 1966 Mrs. Schechter had coronary artery disease.

Dr. Ruskin testified that while at the hospital many tests were performed, as a result of which he recommended the removal of the patient's gall bladder. However, it was determined to treat this condition medically in an attempt to avoid an operation. Surgery, however, was required. She was readmitted and the operation performed.

On the evidence, it must be determined whether it was " of first importance " for Mrs. Schechter to have been admitted to the hospital for diagnostic purposes and whether, during the hospital stay, the diagnostic studies were " of first importance," or whether, in either case, Mrs. Schechter was admitted and kept in the hospital for some other reason which could be denominated " of first importance " not excluded from coverage.

Mrs. Schechter's attending physician, unusually well qualified, testified that Mrs. Schechter's condition required hospitalization " particularly because of the cardiac question," and that bed rest and supportive care were furnished Mrs. Schechter as part of the treatment for coronary disease at the hospital. Dr. Ruskin did testify that every one of the diagnostic procedures followed in the hospital could ordinarily have been performed on an ambulatory basis. However, he testified that the state of her health required that this patient be hospitalized while such procedures were followed:

In part, he stated:

" Q. What was your primary purpose for ordering her admitted to the hospital? A. I was concerned about her health and I felt that she would be safer in hospital where I could watch her closely.

" Q. Was your admission primarily for diagnostic X-ray or laboratory examination? A. No, sir.

" Q. Was the admission of this patient primarily for any diagnostic studies? A. She would almost certainly undergo diagnostic studies.

" Q. The question is ' primarily '? A. No, not primarily, as part of her admission."

It would appear from this testimony that as " primarily " is defined, Mrs. Schechter's admission to the hospital and her hospital stay was not primarily for diagnostic studies. She was not admitted to the hospital as a device to receive payment for diagnostic procedures which should have been performed without hospitalization. So, too, although an arithmetical count of the services rendered Mrs. Schechter during her hospital stay, according to the hospital records, would show more entries for diagnostic studies than for treatment, on the testimony here the diagnostic studies were not " of first importance." " Of first importance " was the care for her cardiac condition while the diagnostic studies were being pursued.

*Society of N. Y. Hosp.* v. *Burstein* (22 A D 2d 768, *supra*) does not establish an interpretation of the policy contrary to the one here applied. The facts there are not recited in the opinion. Reference to the record on appeal and the briefs submitted show that the subscriber's own attending physician testified that the primary reason for putting his patient in the hospital was diagnosis rather than treatment and that the hospitalization was not required for the performance of the diagnostic procedures there performed. In addition, unlike the situation here, the defendant produced expert testimony that the hospitalization was " definitely for a diagnostic work-up " and that hospitalization was " unnecessary for the proper treatment of this patient."

It is here held that the plaintiffs established by a fair preponderance of the credible evidence that Mrs. Schechter's stay at the hospital was within the coverage provided by the policy and was not excluded by article V. (Cf. *Simon* v. *Hospital Serv. of Pittsburgh*, 192 Pa. Super. Ct. 68.)

Judgment is directed to be entered in favor of the plaintiffs against the defendant for the relief demanded in the complaint, with costs and disbursements.