Albert P. Williams, J.
This case involves the construction of a contract of medical care insurance. The case was submitted on an agreed statement of facts.
The decedent, Irving List, was insured under a policy issued by the defendant. The policy originally provided for $10,000 maximum benefit. The maximum benefit was subsequently increased to $15,000 by rider, effective April 1, 1969.
The policy by its terms caused coverage to cease at age 65. On July 20,1967 a letter was sent by Mutual of New York to all insured New York County Bar Association members informing them that although their major medical coverage terminates at age 65, a Medicare supplement rider was now available to those insureds attaining their 65th birthday. On October 1, 1970 Mr. List paid Mutual of New York a total premium of $121.37. Of this amount, $19 was the premium for the medicare supplement, which was to become effective on Mr. List’s 65th birthday, January 8,1971.
Mr. List was hospitalized, for a myocardial infarction while his coverage was in force, from October 18, 1970 until October 23, 1970. He was again hospitalized from December 22, 1970 until December 26, 1970 for a myocardial infarction and an aortic aneurysm. On December 27, 1970 Mr. List was transferred to St. Luke’s Hospital in Houston, Texas. Mr. List was subsequently transferred from that hospital to the New York University Medical Center, Busk Institute of Behabilitation, on January 25, 1971. Mr. List was continuously disabled until the date of his death in February, 1973.
Mr. List incurred medical expenses in excess of the $15,000 maximum benefit. The defendant has paid $8,234.57, which represents $3,096.90 under the basic major medical policy and $5,137.67 under the supplecare rider.
Prior to Mr. List’s eligibility for Medicare, benefits were paid pursuant to the terms of the original major medical policy. Subsequent to the date of Mr. List’s eligibility for Medicare, Mutual of New York has paid Mr. List’s eligible hospital, drug, and *350 nursing expenses in accordance with the terms of the supplecare rider, but which would have been considered eligible expenses under the terms of the original major medical policy.
The parties have submitted to the court the following issues for determination: (a) Is the executrix entitled to recover $6,765.43 which represents the difference between the amount already paid by defendant and the $15,000' maximum benefit under the basic major medical policy ?i or, (b) Has defendant discharged its total obligations and liability to the insured and plaintiff herein by payment under the basic policy until it terminated at his 65th birthday and payment by it of all expenses incurred under the supplecare rider?
The problem arises in this case because of the inception, before the 65th birthday, of an illness which continued until the time Mr. List became eligible for Medicare benefits. The plaintiff argues that, under the extension of benefit provision of the basic policy the defendant was obligated to continue benefits past the normal termination for ‘ ‘ charges incurred in connection with the cause of, and during, the uninterrupted continuance of such disability”. The defendant, on the other hand, argues that, when one becomes eligible for Medicare, the supplecare rider becomes the exclusive basis for medical expense benefits. The plaintiff contends that the defendant’s reading of the policy leads to an ironic result, i.e., by paying for the Medicare supplement rider one will receive greatly reduced benefits than had he elected not to buy the Medicare supplement rider.
Judge Samuel A. Spiegel in the case of Halper v. Aetna Life Ins. Co. of Hartford, Conn. made an extensive analysis of judicial construction of insurance contracts (42 Misc 2d 184, affd. 44 Misc 2d 437, affd. 24 A D 2d 703, mot. for lv. to app. dsmd. 17 N Y 2d 484). In reviewing the law on the subject, Judge Spiegel took notice of the holdings which provide that any doubt in the construction to be adopted must be resolved against the insurer. However, it is the holding in Halper that, where a contract is not ambiguous, the court may not make another contract for the parties, but must enforce the contract as made. An insurance policy must be construed reasonably and given practical construction. However, this should not result in a revision of a policy or an increase in the risk (McGrail v. Equitable Life Assur. Soc. of U. S., 292 N. Y. 419).
Under the basic policy, the coverage was to terminate at the time insured attained age 65. Was there some way to have these benefits extended beyond age 65? Yes, under the extension of benefits provision at page 3 of the policy, previously quoted *351 in part, the next to the last paragraph of' the provision provides: ‘1 However, this extension of benefits shall immediately cease to apply when the individual otherwise entitled to such extended coverage becomes insured under any other franchise policy for benefits of a type similar to those provided by this Policy or under any policy issued by Mutual of New York providing coverage for medical care expenses.”
It appears that the plaintiff seeks to enforce the first portion of the clause but totally disregards the latter portion of the same clause.
At page 10 of the plaintiff’s brief the plaintiff argues that nowhere in the Medicare supplement rider does it limit the policyholder’s right to recover for illnesses occurring before the policyholder’s 65th birthday. The fact of the matter is that the limitation on the extension of benefits appears in the basic policy itself and in the very extension of benefit clause sought to be enforced. Contrary to the plaintiff’s argument at page 10 of the brief, the court finds a limitation of the extension of benefits does exist, not merely an inference of a limitation. It is the plaintiff who is asking the court to disregard the limitation and amend the policy by so disregarding it.
It is the opinion of this court that the language of the policy is not ambiguous. A clear limitation of the extension of benefits was in effect. Expenses incurred after age 65 were covered exclusively by the supplecare rider and not by the basic policy, even though the illness commenced before age 65 and continued uninterrupted. It must also be pointed out that had Mr. List not chosen the supplecare rider, it is not correct that his benefits would have continued completely unaffected. Paragraph 2 of the exclusion and limitations under the basic policy specifically provides that: “ If benefits are provided the Insured Individual for a loss under a program created by a national government or an agency thereof, benefits shall be payable under this Policy only with respect to those charges incurred in connection with such loss which are in excess of the charges on which benefits are based under such programs.”
For the reasons recited the court answers the first question in the negative and the second question in the affirmative. Judgment for the defendant.