PHILIP J. RIGGS, Respondent, v BLUE CROSS OF WESTERN NEW YORK, INC., Appellant.

Fourth Department, April 1, 1983

APPEARANCES OF COUNSEL

*Falk & Seimer* (*Richard C. Marcus* of counsel), for appellant.

*Abbott, Tills, Tills & Knapp* (*Kenneth W. Knapp* of counsel), for respondent.

**OPINION OF THE COURT**

HANCOCK, JR., J. P.

In this appeal we construe a "Contract for Hospital In-Patient and Out-Patient Service" issued by defendant, Blue Cross of Western New York, a nonprofit hospital service corporation. Among other benefits, the contract provides insurance coverage for specified in-patient services and excludes coverage for "[a]dmissions to, or any portion of an admission to, a hospital primarily for * * * convalescent or custodial care; or rest cures."

Plaintiff, a subscriber under the policy, was admitted on January 21, 1980, to the second floor of Bry-Lin Hospital

for withdrawal from alcohol addiction. On January 26, 1980, he was discharged from the second floor and admitted to "Rush Hall", an alcoholism treatment facility in the same building, where he remained for 14 days. Defendant paid benefits for plaintiff's five-day stay on the second floor of Bry-Lin but refused payment for his stay at Rush Hall on the ground that it was within the above exclusion. After trial, Justice Court held that the treatment at Rush Hall was neither "convalescent or custodial care nor a rest cure" and directed defendant to pay. County Court affirmed. We reverse.

In interpreting the exclusion (which to our knowledge has not been construed in any reported decision[1]) we take note of the general rule of construction that words in a contract must be given their plain ordinary meaning (see 29 NY Jur, Insurance, § 607). "Convalescence" has been defined as "the stage of recovery following an attack of disease, a surgical operation, or accidental injury" (Dorlands Illustrated Medical Dictionary [24th ed], p 340), and as "[g]radual recovery of health or physical strength after illness" (Black's Law Dictionary [5th ed], p 299). "Convalesce", according to an accepted authority, means "to get better after illness; to recover strength and health" (Webster's New Twentieth Century Dictionary, Unabridged [2d ed], p 399; see, generally, *Taylor v Phoenix Mut. Life Ins. Co.*, 453 F Supp 372, 378; *Waak v National Bankers Life Ins. Co.*, 180 Neb 129; *Rew v Beneficial Std. Life Ins. Co.*, 41 Wn 2d 577, suggesting that convalescent care is that given after "acute" care is no longer necessary). In determining whether a particular type of care is convalescent care, the nature of the facility required to afford that care — in addition to the time when it is given in relation to the acute stage of the illness — has been found to be significant. For example, in rejecting the insurer's argument that the patient's hospital stay was "primarily for * * * convalescent or sanitarium type care or for a rest cure" the court in *Mount Sinai Hosp. v Zorek* (50 Misc 2d 1037, 1044) noted that the treatment could not "be ade-

<hr />

1. The contract considered in *Mount Sinai Hosp. v Zorek* (50 Misc 2d 1037, 1040) contained a similar exclusion (see discussion, p 366, 367, *infra*) but the decision focused on whether hospitalization was "necessary for proper treatment" of obesity.

quately administered in a rest home or sanitarium". In the same vein, Appleman suggests that convalescent care is care for conditions which "ordinarily can be controlled at home" or "do not require constant monitoring" (1C Appleman, Insurance Law and Practice, § 705.20; see, also, *Employers Cas. Co. v Givens,* 190 SW2d 155 [Tex]).

A reading of the portion of the contract defining hospital in-patient service supports the proposition that it was intended to cover the type of care usually associated with acute illnesses. Significantly, the contract lists as covered services the use of operating and recovery rooms and intensive care units, use of dressings and plaster casts, and use of equipment and supplies in connection with physiotherapy, chemotherapy, electrocardiographs, electroexcephalographs, x-ray examinations, radiation therapy, laboratory and pathological examinations, and administration of oxygen and anesthesia.[2] Services such as "recreational therapy" (charges for which appear on plaintiff's bill from Rush Hall), counseling or group therapy are not listed as covered. We must note also that defendant had made available at additional cost under "Rider 14" — which plaintiff's contract did not include — coverage for convalescent care such as that provided at Rush Hall; the existence of this optional additional protection confirms the conclusion that the policy without Rider 14 was not designed to cover such care.

In our opinion, the term "convalescent care" as employed here means the type of care which is ordinarily given during the recovery period following the acute stage of an illness and which may adequately be administered at home or in a rest home, sanitarium or similar facility.

The exclusion here, we must point out, is for admissions *"primarily"* for such care. "Primarily" means "of first importance or principally" (see *Schechter v Associated Hosp. Serv. of N. Y.,* 52 Misc 2d 82, 84, and authorities cited therein). Thus, even though an admission may not be solely for convalescent care, if such care is of first impor-

2. It should be noted that the policy specifically excludes admissions to, or any portion of an admission to, a hospital "primarily for diagnostic x-ray or laboratory examinations or other diagnostic studies".

tance the exclusion applies (see *Schechter v Associated Hosp. Serv. of N. Y., supra*).

Accepting this interpretation, we have little difficulty in holding that plaintiff's admission to Rush Hall was "an admission * * * primarily for * * * convalescent * * * care". Withdrawal from alcohol addiction — which the record shows to be an acute medical emergency presenting danger of heart failure and requiring drug treatment and close observation — is treated on the second floor of Bry-Lin. When this process is complete (usually within five days or a week), the patient may go home. The longer-term care following withdrawal which a discharged patient may elect to take at Rush Hall consists of group therapy and counseling and is usually done without drugs. (Indeed, plaintiff stated that the only drugs he took at Rush Hall were those he took when he was at home.) Full hospital facilities are not needed for this care. The purpose of the stay at Rush Hall is to help the patient to understand his alcohol problem and to prevent its recurrence — in other words, to help him recover from his dependence once the acute condition of withdrawal is over.

We have examined the other points raised on appeal and find them to be without merit. The order of the Erie County Court and the judgment of the Justice Court of the Town of Hamburg should be reversed and the complaint dismissed.

CALLAHAN, DOERR, DENMAN and MOULE, JJ., concur.

Order of Erie County Court and judgment of Justice Court of the Town of Hamburg unanimously reversed, on the law and facts, without costs, and complaint dismissed.